1998BROC

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   BROOKFIELD ASSET MANAGEMENT,
     INC.,
 4
                  Plaintiff,
 5
             v.                           09 Cv. 8285 (PGG)
 6
     AIG FINANCIAL PRODUCTS CORP.,
 7
                  Defendant.
 8
     ------------------------------x
 9
                                          September 9, 2011
10                                        3:10 p.m.

11   Before:

12                       HON. FRANK MAAS

13                                        Magistrate Judge

14                         APPEARANCES

15   JENNER & BLOCK
          Attorneys for Plaintiff
16   BY:  STEPHEN ASCHER
          RICHARD ZIEGLER
17        LUKE McLOUGHLIN
          NATHANIEL BENFORADO
18
     QUINN EMANUEL URQUHART & SULLIVAN LLP
19        Attorneys for Defendant
     BY:  JONATHAN E. PICKHARDT
20        JAKE M. SHIELDS
          RICO JEDRZEJCZYK
21

22

23

24

25
```

1998BROC

1           (Case called)
2           THE DEPUTY CLERK:  Counsel, state your name for the
3    record, please.
4           MR. ASCHER:  Stephen Ascher, Jenner & Block, for
5    plaintiffs.  I am here with my colleagues Richard Ziegler, Luke
6    McLoughlin, and Nate Benforado.
7           I have one somewhat unusual request to start with.  My
8    son is on the way to the emergency room.  I think it's fine,
9    but if the phone rings, I would like to go outside and take it.
10          THE COURT:  Sure.  No problem whatsoever.
11          MR. PICKHARDT:  John Pickhardt from Quinn Emanuel.  I
12   am joined at counsel table by my colleagues Jake Shields and
13   Rico Jedrzejczyk.
14          THE COURT:  I have read the letters submitted by both
15   sides concerning deposition discovery, and I guess my first
16   question is whether there were any other issues we ought to be
17   taking up today or whether that's really what is on the agenda?
18          MR. ASCHER:  Brookfield will have a few more document
19   issues to raise, but it was our understanding that this
20   conference was intended solely to cover deposition issues.
21          MR. PICKHARDT:  From AIG's perspective, we would have
22   been prepared to address additional issues if they had been
23   raised in the letter, but none were raised.
24          THE COURT:  We can deal with it some other time.
25          I have read the letters.  I could hear both sides

1998BROC

1    about their positions, but failing that, I am prepared to
2    simply give you my rulings, some of which are compromises
3    between what you suggested, some of which are slightly
4    different.
5            MR. ASCHER:  I think, your Honor, we would be happy to
6    hear your rulings and maybe we will try to sway you a bit
7    afterwards.
8            THE COURT:  Let me tell you also that I took the
9    liberty of telling Judge Gardephe what I planned to do, and I
10   think it's fair to say he is on the same page.
11           Subject to the understanding that we will revisit a
12   question of the number of depositions for good cause shown, I
13   disagree that there should be parity here, because I do think
14   that the burden is greater on Brookfield in terms of number of
15   issues, complexity of issues and the like.
16           So the number of depositions that I have concluded is
17   appropriate is going to be 30 for the plaintiffs and 15 for
18   AIG.  That's not 30 in 2011.
19           I am going to fix the deposition days, unless the
20   parties otherwise agree, as eight hour days, and I am going to
21   say that you can schedule half days, and if you do, you can
22   increase the number of depositions through that mechanism.  So
23   if, for example, Brookfield were disposed only to take half-day
24   depositions, it could by March 30 take 60 such depositions.
25           I am not going to worry about what depositions or what

1    proportion of the depositions get taken in 2011.  My only goal
2    is to complete deposition discovery by March 30.
3           I am also not going to micromanage and I am going to
4    leave it to the parties, unless problems arise, the sequencing
5    of party versus nonparty depositions.
6           Each side is going to be directed to produce its
7    initial proposed witness list by October 7.  I would expect
8    that there will be a lot of changes as you go along, both in
9    terms of identity of proposed witnesses and sequencing, but I
10   assume those are things you will be able to negotiate.
11          When deposition scheduling issues arise, I have a
12   standard way of dealing with them, which involves a dartboard,
13   so you're far better off working out any sort of problems
14   amongst yourselves.  If the darts land on Saturday, Sunday or
15   Christmas Eve, I don't lose any sleep about that.
16          I do think there should be a breathing period at the
17   end of the production of that volume of documents that are
18   going to be produced in this case.  I am going to say that the
19   depositions should not begin before November 1.
20          I do think it should not be deposition by ambush, and
21   there are obviously documents that will be continuing to flow
22   in to both sides from third parties and from opposing parties.
23   So my ruling will be that no document shall be used at a
24   deposition unless it's made available to opposing counsel one
25   week before, at least, obviously, one week before.

1                I am not going to accept the suggestion,
2    Mr. Pickhardt, that no witness can be questioned at trial about
3    an exhibit or document that was not available when that witness
4    was deposed.  I don't think that's realistic, and I am not sure
5    it would be fair.
6                I will require that depositions be noticed at least 14
7    days before they are taken.  Hopefully, for most of the
8    depositions there will be far more notice than that.
9                One thing I was curious about, because both letters
10   were silent about it, is 30(b)(6) depositions.  Did you have
11   any discussions among yourselves about those?
12               MR. ASCHER:  Your Honor, there are certainly some
13   issues on which Brookfield has thought about whether 30(b)(6)
14   depositions will be appropriate, and so that's certainly a
15   mechanism that we will explore and perhaps explore more given
16   the other limitations that you have set forth.
17               THE COURT:  Tentatively my ruling is going to be that
18   if there are 30(b)(6) depositions, they will be part of the 30
19   depositions for plaintiff or 15 for defendant that I have set
20   as the limit.
21               I don't want this to be more fixed in stone than it
22   should be so I think it's useful to revisit the question down
23   the road, and I am going to require that by January 31, both
24   sides make submissions to me if they wish to exceed the number
25   of fact depositions that I have set.  I think Mr. Pickhardt's

1    suggestion that the good cause standard apply is appropriate,
2    but unless the two sides agree, it's going to be a fairly heavy
3    lift to convince me to increase the number of depositions.
4             Since I fixed a date for when you're going to tell me
5    what additional depositions, if any, you wish to take, I am
6    going to set a conference just so we have a date set aside for
7    February 8, next year, at 2 p.m. to deal with those questions.
8             Bear with me a second because I think there was one
9    other comment I wanted to make.  If there is, I can't think of
10   it now.
11            Any reaction, any comments?
12            MR. PICKHARDT:  Thank you, your Honor.  From AIG's
13   perspective, we don't have many comments but would like to
14   offer three observations or questions.
15            THE COURT:  Sure.
16            MR. PICKHARDT:  First, just for a point of
17   clarification, I take it that the number of depositions that
18   you have identified includes both party and nonparty
19   depositions.  I think that was implicit in your ruling, but I
20   just wanted to confirm that.
21            THE COURT:  Yes.
22            MR. PICKHARDT:  Secondly, with respect to the notice
23   period for party depositions, we had included in our letter a
24   suggestion that there would be a slightly longer notice period
25   when we are dealing with former employees, given the complexity

1   of us having to impose upon people who we don't have the same
2   level of control over in preparing for a deposition.  Would the
3   Court be amenable instead of 14 days to have 30 days advance
4   notice for former employees?
5           THE COURT:  What is Brookfield's reaction to that?
6           MR. ASCHER:  I am not sure I fully understand the need
7   for that much notice, your Honor.
8           THE COURT:  Why don't we make it 21 days, and if there
9   are particular witnesses who are particularly disgruntled with
10  AIG, and there are issues that come up, either you folks will
11  work it out or I will deal with it.
12          MR. PICKHARDT:  Thank you.
13          The last question is with respect to AIG's proposal
14  concerning some element of cost-shifting.  As we are moving
15  into further discovery, that is, where AIG is going to be
16  bearing excessive costs with respect to preparing and defending
17  its witnesses, we had proposed what we thought was reasonable,
18  which was that AIG would bear its own costs with respect to the
19  first 20 deponents, but in order to set appropriate incentives
20  with respect to witnesses where there may be diminishing
21  returns, that those incentives would be appropriately set if
22  Brookfield were to bear the cost past the 20 deponents.
23          THE COURT:  I have never done that in any case, and I
24  am not going to start with this one, even though it is an
25  unusual case.

Case 1:09-cv-08285-RA-FM   Document 157   Filed 04/02/12   Page 8 of 15     8
1998BROC

1           While you were talking, and this may be worse from
2   your perspective, I thought of the remaining point I wanted to
3   make, which is that any witness who is not deposed but who
4   appears on somebody's trial witness list I will permit a
5   deposition of between the submission of the pretrial order and
6   the trial date.  I would imagine that will be relatively few
7   individuals, but I think that also makes the process more fair
8   and makes the numbers that I stipulated less onerous for both
9   sides.
10          MR. PICKHARDT:  In that regard, one other point that
11  we had raised in our letter was it may be the case that either
12  AIG or Brookfield has been in contact with former employees of
13  the other for whom they may ultimately be interested in using
14  in some fashion in the case, and we have requested that it
15  seemed appropriate at this stage that there be disclosure with
16  respect to the identity of those individuals in order that we
17  may be interested in deposing them.  Is that something that the
18  Court would consider at this time?
19          THE COURT:  Let me hear from Brookfield first as to
20  that.
21          MR. ASCHER:  I am not aware of any authority for
22  ordering us to produce that information, which I consider to be
23  work product of a fairly sacred sort.  So we oppose the
24  request.
25          THE COURT:  I mean, I would think that if Brookfield,

1   for example, wants to depose somebody who, in effect, is
2   witness friendly to them, that will become fairly obvious when
3   you reach out to that witness to try to prepare him or her.  I
4   think you're protected by the provision that says, if somebody
5   shows up on the witness list of the adverse side and you
6   haven't deposed that person, you will have the opportunity to
7   do it at the tail end.  So I am not inclined to grant any
8   further relief in that area.
9            MR. PICKHARDT:  Thank you, your Honor.
10           MR. ASCHER:  We have a few suggestions that may help
11  this process be workable for both sides.
12           First of all, we talked about AIG's concern that they
13  would be surprised about documents.  We are actually willing to
14  go further than you ordered under the right conditions, which
15  is to agree that both parties will exchange, say, three days
16  before each deposition a binder of documents that they intend
17  to use in the deposition so long as, first of all, it's
18  non-preclusive.  If we come up with something the morning of
19  the deposition or in the deposition, we will work that out.
20  But as a courtesy, both sides will give the other side the
21  advance notice of what the documents will be.
22           THE COURT:  I thought about requiring that but it
23  seemed too fair.  But if both sides are amenable to that, and
24  let me just say or anything else, if you can work out rules
25  around me, you can agree to disagree with my rulings.  This one

Case 1:09-cv-08285-RA-FM   Document 157   Filed 04/02/12   Page 10 of 15    10
1998BROC

1  it seems to me it's probably something that would work to both
2  sides' advantage.
3          MR. ASCHER:  The only condition on it, which I think
4  would be obvious, is one of the benefits to Brookfield would be
5  that we wouldn't spend precious deposition time with witnesses
6  saying, well, I need to read the document before I answer the
7  question.  So the understanding would be either they won't need
8  to read the document, or if they do need to take any
9  significant amount of time, we will stop the clock running for
10 that period.
11         MR. PICKHARDT:  Your Honor, we are amenable to the
12 suggestion of having a reciprocal obligation to show documents
13 to the other side a few days in advance of the deposition.  We
14 do agree with Brookfield that that will likely make the
15 depositions more efficient.  I am not sure that it's going to
16 be particularly workable, like in a chess match, to have a
17 button pushed every time a witness is looking at a document,
18 given that I expect that there will be extensive binders of
19 documents that are exchanged in this process, but we do think
20 this will probably serve both sides' interests to have the
21 deposition conducted more efficiently.
22         THE COURT:  I think the second piece of it is not
23 something that I would adopt, but, obviously, if a witness is
24 there for an eight-hour deposition and spends seven hours
25 looking at lengthy documents that were produced by AIG with

1   respect to an AIG witness, then I would probably look very
2   favorably upon the request to extend that deposition.  I think
3   that's a useful modification.
4          Did you have some others?
5          MR. ASCHER:  Yes.  First of all, it somewhat belatedly
6   occurred to us that there may have been a substantial number of
7   depositions in potentially related or somewhat related matters.
8   The AIG class action, for example, although there are many
9   issues in that case that are different from this one and vice
10  versa, there are certainly a handful of issues that overlap
11  quite significantly, and if witnesses on those issues have
12  already given testimony, obviously we would like that
13  testimony, and we think it would help avoid the need for some
14  depositions to the extent those witnesses have been thoroughly
15  questioned on relevant topics here.
16         MR. PICKHARDT:  Your Honor, we actually just heard
17  about this idea first this morning from Brookfield so we
18  haven't had an opportunity to conduct a full inquiry as to the
19  scope of whatever other depositions or recorded interviews or
20  so forth they have heard.  But our understanding is, with
21  respect to the securities class action, the depositions have
22  not yet commenced so there are no depositions with respect to
23  that.  Even from the regulatory side, our understanding is that
24  there are a very small number of depositions.  So while we
25  welcome the creative thinking, we are not sure that's going to

1   obviate much of the need with respect to depositions.

2            THE COURT:  Why don't we table that.

3            MR. ASCHER:  We will try to keep track of what is

4   happening in the other matter and see if there are

5   opportunities to coordinate, your Honor.

6            THE COURT:  Or double team as the case may be.

7            MR. ASCHER:  That's a nice way to put it.

8            One other suggestion that we had, your Honor, is, as

9   you know, typically the first hour or so of the deposition

10  involves getting the witness's background -- prior employment,

11  employment history at AIG, job responsibilities at AIG -- and

12  it occurred to us that it would be helpful if we could come up

13  with a template that the witnesses would complete in advance.

14  I am sure there would still be some follow-up questions

15  necessary, but it would help us hit the ground running in each

16  deposition, and again, I think it would be in both sides'

17  interest.

18           THE COURT:  Even if you agree that you're going to

19  have different issues with nonparty witnesses or former

20  employees on both sides.

21           MR. ASCHER:  That's true.  This probably will only be

22  workable -- well, the nonparties may have their own reasons for

23  complying with this if they think it will save them some time.

24           MR. PICKHARDT:  On that issue I don't have a position.

25  It would have to be something that would have to be limited to

1  party witnesses, but this is the first I am hearing that idea
2  so it's something I would like an opportunity to consider.
3              THE COURT:  It sounds sensible as long as the
4  questionnaire isn't 75 pages.
5              MR. ASCHER:  We will try to work something out before
6  our next conference.
7              THE COURT:  At a minimum, the CV of whoever the
8  witness is, if it hasn't already been requested and obtained,
9  probably ought to be exchanged.
10             MR. ASCHER:  Thank you.
11             One other reaction, your Honor.  You mentioned that
12 you don't want to micromanage the way the depositions are
13 scheduled within the seven month period, and I do understand
14 that.  But I also have a concern that your plan for us to be
15 able to seek a good cause permission to take additional
16 depositions at the end of January, I think it was, will be
17 frustrated if a large proportion of the depositions haven't, or
18 at least a significant proportion of the depositions haven't
19 occurred by that date.  And so I think we need some sort of
20 mechanism to ensure that we have made enough progress by that
21 time to be able to make an intelligent submission to your Honor
22 about why we need more depositions.  We haven't fully talked
23 this out yet, but I think that's a small hole in it.
24             THE COURT:  I don't want to be the Grinch that stole
25 Christmas, but my expectation would be that a large number of

1   the depositions would be taken in the first three months.  In
2   terms of who goes first, how you alternate, all of that, I
3   would much prefer to leave that to you folks to work out.
4            MR. ASCHER:  I guess we can try to work with that
5   expectation, your Honor, and see where we are a month or two
6   from now.
7            THE COURT:  OK.  Anything else?
8            MR. ASCHER:  Nothing more from Brookfield.
9            MR. PICKHARDT:  Nothing from AIG.
10           THE COURT:  Both sides indicated that they had some
11  document issues that they wanted to take up.  I guess the
12  question is when you can get me letters about that.
13           MR. ASCHER:  Yes, your Honor.  The document
14  productions are, although there has been lots of hard work on
15  both sides, there seems to be plenty more to come from AIG in
16  the month of September and possibly beyond, and we do have some
17  issues that we have tried to negotiate but only broke down late
18  in the process.  I think we would be interested in setting
19  another conference within the next three to four weeks.
20           THE COURT:  Yom Kippur is October 8.  If I set a
21  conference at 2:00 on the 7th of October, is that doable or
22  does that present a problem for anyone?
23           MR. ASCHER:  The day before would be preferable for
24  me, your Honor, for that reason.
25           MR. ZIEGLER:  If the Court has any free time the week

1998BROC

1    before, that might be preferable.
2             THE COURT:  That's Rosh Hashanah.
3             How about the 4th at 10 a.m.?  That's Tuesday.
4             Do we have a protocol for when I get letters?
5             MR. PICKHARDT:  We do, your Honor.
6             THE COURT:  Follow the protocol.
7             MR. ZIEGLER:  I have a conference call with a tribunal
8    set for 9 a.m. that morning.
9             THE COURT:  2 in the afternoon?
10            MR. ZIEGLER:  That will be great.  Thank you.
11            THE COURT:  Anything else?
12            MR. ASCHER:  Thank you, your Honor.
13            MR. PICKHARDT:  Thank you, your Honor.
14            THE COURT:  Have a nice weekend.
15            (Adjourned)
16
17
18
19
20
21
22
23
24
25